# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | |
|---|---|
| DANIEL FOX JR. and ROBERT SOVINE, Individually and for Others Similarly Situated, | **Case No. 2:26-cv-00273** |
| v. | Jury Trial Demanded |
| JAN-CARE AMBULANCE, INC. | FLSA Collective Action<br>Rule 23 Class Action |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Daniel Fox Jr. (Fox) and Robert Sovine (Sovine) bring this class and collective action to recover unpaid wages and other damages from Jan-Care Ambulance, Inc. (Jan-Care).

2.     Jan-Care employed Plaintiffs as its Hourly Employees (defined below).

3.     Plaintiffs and the other Hourly Employees regularly work more than 40 hours in a workweek.

4.     But Jan-Care does not pay Plaintiffs and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 each workweek.

5.     Instead, Jan-Care deducts approximately 3 hours from Plaintiffs and the other Hourly Employees for "sleep time," during 24-hour shifts working at Jan-Care's facilities (Jan-Care's "sleep deduction policy").

6.     But Plaintiffs and the other Hourly Employees are required to remain on call and on duty during this "sleep time," and are frequently interrupted by work duties.

7.      Jan-Care also pays Plaintiffs and the other Hourly Employees shift differentials that it fails to include in these employees' regular rates of pay for the purpose of calculating their overtime rates (Jan-Care's "shift differential pay scheme").

8.      Jan-Care's sleep deduction policy and shift differential pay scheme violate the Pennsylvania Minimum Wage Law (PMWL) and Fair Labor Standards Act (FLSA) by failing to compensate Plaintiffs and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

9.      Additionally, Jan-Care's sleep deduction policy and shift differential pay scheme violate the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Plaintiffs and the other Hourly Employees of earned wages, including overtime wages, on their regular paydays and/or following the termination of their employment.

## JURISDICTION & VENUE

10.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11.      The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

12.      This Court has general personal jurisdiction over Jan-Care because it is registered, as it is required to be, to do business as an ambulance service in the Commonwealth and based on its substantial contacts with and business done in Pennsylvania, including employing numerous employees in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

13.      Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in Washington, Allegheny, and Greene Counties, Pennsylvania, which are in this District and Division. 28 U.S.C. § 1391(b)(2).

14.     Specifically, Jan-Care employed Plaintiffs and other Hourly Employees in and around these counties under its sleep deduction policy and shift differential pay scheme.

**PARTIES**

15.     Fox has worked for Jan-Care as an emergency medical technician (EMT) since approximately September 2024.

16.     Sovine worked for Jan-Care as an EMT from approximately June 2012 until July 2025.

17.     Throughout their employment, Jan-Care subjected Plaintiffs to its sleep deduction policy and shift differential pay scheme.

18.     Fox's written consent is attached as **Exhibit 1**.

19.     Sovine's written consent is attached as **Exhibit 2.**

20.     Plaintiffs bring this class and collective action on behalf of themselves and similarly situated Jan-Care employees.

21.     The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Jan-Care paramedics and EMTs during the last three years through final resolution of this action (the "FLSA Collective Members").**

22.     Plaintiffs also seek to represent a Pennsylvania class under FED. R. CIV. P. 23 defined as:

> **All hourly Jan-Care paramedics and EMTs who worked in, or were based out of, Pennsylvania during the past 3 years through final resolution of this action (the "Pennsylvania Class Members").**

23.     The FLSA Collective Members and Pennsylvania Class Members are collectively referred to as the "Hourly Employees."

24.     Jan-Care is a West Virginia corporation headquartered in Beckley, West Virginia.

25.     Jan-Care may be served with process through its registered agent: **Richard Cornett II, 1511 Roundhill Road, Oak Hill, West Virginia 25901**, or wherever he may be found.

**FLSA COVERAGE**

26.     At all relevant times, Jan-Care was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

27.     At all relevant times, Jan-Care was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

28.     At all relevant times, Jan-Care was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

29.     At all relevant times, Jan-Care had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

30.     At all relevant times, Plaintiffs and the other Hourly Employees were Jan-Care's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

31.     At all relevant times, Plaintiffs and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

**FACTS**

32.      Jan-Care touts itself as "the largest EMS provider in West Virginia … with over 430 employees [and] … respond[ing] to over 100,000 calls annually."[1]

33.     To meet its business objectives, Jan-Care employs workers, including Plaintiffs and the other Hourly Employees, to transport and care for patients.

---

[1] https://www.jancare.com/ (last visited February 11, 2026).

34.    For example, Jan-Care has employed Fox as an EMT in West Virginia, Virginia, and Pennsylvania since approximately September 2024.

35.    And Jan-Care employed Sovine as an EMT in West Virginia, Virginia, and Pennsylvania from approximately June 2012 until July 2025.

36.    Their job duties include responding to emergency calls, evaluating patients, providing emergency medical care, and transporting patients to medical facilities.

37.    Throughout their employment, Plaintiffs regularly worked more than 40 hours in a workweek.

38.    Indeed, Plaintiffs typically worked approximately 2 to 3 24-hour shifts each week (48 to 72 hours in a workweek).

39.    Jan-Care paid Fox approximately $13.32 an hour.

40.    Jan-Care paid Sovine approximately $15.45 an hour.

41.    Likewise, the other Hourly Employees typically work approximately 2 to 3 24-hour shifts each week (48 to 72 hours in a workweek).

42.    And Plaintiffs and the other Hourly Employees are required to report their "on the clock" hours via Jan-Care's designated timekeeping system.

43.    But Jan-Care does not pay Plaintiffs and the other Hourly Employees for all the hours they work.

44.    Instead, Jan-Care subjects Plaintiffs and the other Hourly Employees to its sleep deduction policy.

45.    Specifically, Jan-Care deducts approximately 3 hours from Plaintiffs and the other Hourly Employees for "sleep time."

46.     However, Plaintiffs and the other Hourly Employees are required to remain on Jan-Care's premises, remain on call, monitor phones and pagers for calls that come in, respond to calls, and otherwise continue performing their regular job duties during their "sleep time."

47.     Thus, Plaintiffs and the other Hourly Employees spend their "sleep time" working on behalf of Jan-Care, on its premises, and for its primary benefit.

48.     Jan-Care deducts approximately 3 hours from Plaintiffs and the other Hourly Employees regardless of whether their "sleep time" is on duty and/or interrupted.

49.     Jan-Care simply assumes that Plaintiffs and the other Hourly Employees receive *bona fide*, uninterrupted "sleep time" each shift.

50.     Thus, Jan-Care does not pay Plaintiffs and the other Hourly Employees for this time.

51.     Plaintiffs and the other Hourly Employees did not agree to the deduction of any "sleep time" from their hours.

52.     Jan-Care's sleep deduction policy violates the FLSA by depriving Plaintiffs and the other Hourly Employees of wages, including overtime wages, for hours worked during their 24-hour shifts. *See*, 29 C.F.R. § 785.22.

53.     And Jan-Care does not pay Plaintiffs and the other Hourly Employees at the required premium overtime rates for hours worked after 40 in a workweek.

54.     Instead, Jan-Care pays Plaintiffs and the other Hourly Employees under its shift differential pay scheme.

55.     Specifically, Jan-Care pays Plaintiffs and the other Hourly Employees shift differentials it labels "BVA," "CVA," "HVA," and "VAFB" that it excludes from their regular rates of pay for overtime purposes during workweeks they are earned and the Hourly Employees work in excess of 40 hours.

56.     Thus, under its shift differential pay scheme, Jan-Care does not pay Plaintiffs and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for hours they work in excess of 40 in a workweek.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

57.     Plaintiffs bring their claims as a class and collective action on behalf of themselves and the other Hourly Employees.

58.     Like Plaintiffs, the other Hourly Employees are victimized by Jan-Care's sleep deduction policy and/or shift differential pay scheme.

59.     Other Hourly Employees worked with Plaintiffs and indicated they worked under the same policies and were paid in the same manner under Jan-Care's, sleep deduction policy and/or shift differential pay scheme.

60.     Based on their experience with Jan-Care, Plaintiffs are aware Jan-Care's sleep deduction policy and shift differential pay scheme were imposed on other Hourly Employees.

61.     The Hourly Employees are similarly situated in the most relevant respects.

62.     Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

63.     Therefore, specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

64.     Rather, Jan-Care's sleep deduction policy and shift differential pay scheme render Plaintiffs and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rates—based on all remuneration—for all hours worked in excess of 40 in a workweek.

65.     Jan-Care's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

66.     Jan-Care's records also show it deducted hours for "sleep time."

67.     Jan-Care's records further show it paid the Hourly Employees shift differentials it failed to include in their regular rates of pay for overtime purposes.

68.     The back wages owed to the Hourly Employees can therefore be calculated using the same formula applied to the same records.

69.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Jan-Care's records, and there is no detraction from the common nucleus of liability facts.

70.     Therefore, the issue of damages does not preclude class or collective treatment.

71.     Plaintiffs' experiences are typical of the experiences of the other Hourly Employees.

72.     Plaintiffs have no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

73.     Plaintiffs have an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Pennsylvania law.

74.     Plaintiffs and their counsel will fairly and adequately protect the interests of the Hourly Employees.

75.     Plaintiffs retained counsel with significant experience in handling complex class and collective action litigation.

76.     Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries and Jan-Care will reap the unjust benefits of violating the FLSA and Pennsylvania law.

77.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

78.    Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Jan-Care.

79.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

80.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

81.    Among the common questions of law and fact are:

    a.    Whether Jan-Care deducted approximately hours for so called "sleep time";

    b.    Whether the Hourly Employees performed compensable work during their "sleep time";

    c.    Whether Jan-Care paid the Hourly Employees shift differentials;

    d.    Whether Jan-Care failed to include these shift differentials in calculating the Hourly Employees' regular rates of pay;

    e.    Whether Jan-Care failed to timely pay the Hourly Employees all earned wages;

    f.    Whether Jan-Care failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

    g.    Whether Jan-Care's decision not to pay the Hourly Employees wages, including overtime wages at the required rates—based on all

remuneration—for all overtime hours worked was made in good faith;
and

h.      Whether Jan-Care's violations were willful.

82.      There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

83.      The Hourly Employees are known to Jan-Care, are readily identifiable, and can be located through Jan-Care's business and personnel records.

### JAN-CARE'S VIOLATIONS WERE WILLFUL, UNREASONABLE, AND NOT THE RESULT OF A BONA FIDE DISPUTE

84.      Jan-Care knew it employed Plaintiffs and the other Hourly Employees.

85.      Jan-Care knew it was subject to the FLSA's and PMWA's overtime provisions.

86.      Jan-Care knew the FLSA and PMWA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

87.      Jan-Care knew it was subject to the WPCL.

88.      Jan-Care knew the WPCL required it to pay employees, including its Hourly Employees, all earned wages (including overtime) on their regular paydays and following the termination of employment.

89.      Jan-Care knew Plaintiffs and the other Hourly Employees were non-exempt employees entitled to overtime pay.

90.      Jan-Care knew Plaintiffs and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because it recorded these employees' "on the clock" hours via its timekeeping system.

91.     Jan-Care knew it was required to include the shift differentials it paid the Hourly Employees in their regular rates of pay for overtime purposes.

92.     Jan-Care nonetheless knew it excluded this compensation from the Hourly Employees' regular rates of pay for overtime purposes.

93.     Jan-Care knew it was required to pay the Hourly Employees for all hours worked but failed to pay them for so called "sleep time" they spent performing their regular job duties.

94.     Jan-Care knew it required, requested, suffered, or permitted the Hourly Employees to work for its predominant benefit during their unpaid "sleep time."

95.     Jan-Care knew that, as the Hourly Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that Jan-Care did not want performed.

96.     Jan-Care's decision to deduct hours from the Hourly Employees' for "sleep time" was neither reasonable, nor was it made in good faith.

97.     Jan-Care's failure to pay the Hourly Employees earned wages for all hours worked on regular paydays and following the termination of their employment was unreasonable.

98.     Jan-Care's failure to pay the Hourly Employees their earned wages was not the result of a *bona fide* dispute.

99.     Jan-Care knowingly, willfully, and/or in reckless disregard carried out its unlawful shift differential pay scheme and sleep deduction policy that deprived Plaintiffs and the other Hourly Employees of earned wages, including overtime wages at the required rate of pay—based on all remuneration—for all overtime hours, in violation of the FLSA, PMWA, and WPCL.

100.     Jan-Care knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA and Pennsylvania law.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

101.    Plaintiffs bring their FLSA claim as a collective action on behalf of themselves and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

102.    Jan-Care violated, and is violating, the FLSA by employing non-exempt employees such as Plaintiffs and the other FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for hours in excess of 40 in a workweek.

103.    Jan-Care's unlawful conduct harmed Plaintiffs and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

104.    Accordingly, Jan-Care owes Plaintiffs and the other FLSA Collective Members the difference between the wages actually paid and the proper overtime wages actually earned.

105.    Because Jan-Care knew or showed reckless disregard for whether this its conduct violated the FLSA, Jan-Care owes Plaintiffs and the other FLSA Collective Members these wages for at least the past 3 years.

106.    Jan-Care is also liable to Plaintiffs and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

107.    Finally, Plaintiffs and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
### (PENNSYLVANIA CLASS)

108.    Plaintiffs bring their PMWA claim as a class action on behalf of themselves and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

109.    The conduct alleged violates the PMWA (43 PA. STAT. §§ 333.101, *et seq.*)

110.    At all relevant times, Jan-Care was subject to the PMWA because Jan-Care was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

111.    At all relevant times, Jan-Care employed Plaintiffs and each of the other Pennsylvania Class Members as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

112.    The PMWA requires employers, like Jan-Care, to pay non-exempt employees, including Plaintiffs and the other Pennsylvania Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

113.    Jan-Care violated, and is violating, the PMWA by employing non-exempt employees (Plaintiffs and the other Pennsylvania Class Members) for workweeks in excess of 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

114.    Jan-Care's unlawful conduct harmed Plaintiffs and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

115.    Accordingly, Jan-Care owes Plaintiffs and the other Pennsylvania Class Members the difference between the wages actually paid and the overtime wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

116.    Finally, Plaintiffs and the other Pennsylvania Class Members are entitled to recover their reasonable attorneys' fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

<u>COUNT III</u>
FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL
(WPCL CLASS)

117.    Plaintiffs bring their WPCL claims as a class action on behalf of themselves and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

118.    Jan-Care's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq.*

119.    At all relevant times, Jan-Care was subject to the WPCL because Jan-Care was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

120.    At all relevant times, Jan-Care employed Plaintiffs and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

121.    The WPCL requires employers, like Jan-Care, to pay employees, including Plaintiffs and the other Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

122.    Jan-Care violated, and is violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

123.    Plaintiffs' and the other Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

124.    Jan-Care's unlawful conduct harmed Plaintiffs and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

125.    Jan-Care's failure to pay Plaintiffs and the other Pennsylvania Class Members all their earned wages was not the result of a *bona fide* dispute.

126.    Rather, Jan-Care knowingly failed to pay earned wages to Plaintiffs and the other Pennsylvania Class Members.

127.    Accordingly, Jan-Care owes Plaintiffs and the other Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

128.    Jan-Care also owes Plaintiffs and the other Pennsylvania Class Members liquidated damages in an amount equal to 25% of the total amount of wages due, or $500, whichever is greater. *See* 43 PA. STAT. § 260.9a.

129.    Finally, Plaintiffs and the other Hourly Employees are entitled to recover their attorney's fees and costs. See 43 PA. STAT. § 260.9a(f).

## JURY DEMAND

130.    Plaintiffs demand a trial by jury on all Counts.

## RELIEF SOUGHT

Plaintiffs, individually and on behalf of the other Hourly Employees, seek the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Plaintiffs and their counsel to represent the interests of the Hourly Employees;

d.    An Order finding Jan-Care liable to Plaintiffs and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

e.  An Order finding Jan-Care liable to Plaintiffs and the other Hourly Employees for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f.  An Order finding Jan-Care liable to Plaintiffs and the other Hourly Employees for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to the greater of 25% of their unpaid wages or $500;

g.  A Judgment against Quality awarding Plaintiffs and the other Hourly Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA, PMWA, and/or WPCL;

h.  An Order awarding attorney's fees, costs, and expenses;

i.  Pre- and post-judgment interest at the highest applicable rates; and

j.  Such other and further relief as may be necessary and appropriate.

Dated: February 13, 2026

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Michael A. Josephson*

Michael A. Josephson
PA ID No. 308410
Andrew W. Dunlap
TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone:      (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone:      (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Joshua P. Geist, Esquire
PA ID No. 85745
William F. Goodrich, Esquire
PA ID No. 30235
**GOODRICH & GEIST, PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

**ATTORNEYS FOR PLAINTIFFS AND THE HOURLY EMPLOYEES**